1997-NMCA-061

943 P.2d 532

**Gaetano GIANGRECO, Plaintiff–Appellant,**

v.

**James MURLLESS, Superintendent, Moriarty Municipal Schools; Joe Chavez, Jerry King, Alan Weingarten, Marilyn Marrs and Steve Jones, Members of the Board of Education of the Moriarty Municipal Schools; and the Board of Education of the Moriarty Municipal Schools, Defendants–Appellees.**

No. 17238.

Court of Appeals of New Mexico.

May 8, 1997.

Certiorari Denied June 17, 1997.

Jerry Todd Wertheim, Jones, Snead, Wertheim, Wentworth & Jaramillo, P.A., Santa Fe, for Plaintiff–Appellant.

Virginia R. Dugan, Frank J. Albetta, Simons, Cuddy & Friedman, LLP, Santa Fe, for Defendants–Appellees.

**OPINION**

BOSSON, Judge.

1. At the end of the school year, if a nontenured teacher is notified of a school board's intent not to reemploy for the coming year, that teacher historically has little legal recourse. *See Provoda v. Maxwell,* 111 N.M. 578, 808 P.2d 28 (1991). This case requires us to determine whether regulatory changes by the State Board of Education since *Provoda* would change that outcome. We reach a result similar to *Provoda* and affirm the decision of the district court to the same effect.

**BACKGROUND**

2. Plaintiff was a nontenured teacher with the Moriarty public school system during the 1993–94 school year which was scheduled to end on May 27, 1994. Three weeks before the end of the school year, on May 4, Plaintiff's supervisors advised him in a written memorandum that they intended to recommend his reemployment to the Moriarty Board of Education (the Board) for the coming school year. Shortly thereafter, the supervisors changed their minds and indicated to Plaintiff they would not recommend his reemployment. On May 6, Plaintiff submitted a letter to the supervisors, responding to their initial intention to recommend reemployment, stating: "It is my intention to accept your offer of employment for the 1994–95 schoolyear." The Board met on May 12 and decided against reemploying Plaintiff, and on May 23, Plaintiff was given a

written notice to that effect. Plaintiff was not reemployed and has not worked for the Moriarty schools since then.

3. Plaintiff then filed a complaint in district court seeking a declaratory judgment that he had a binding employment contract with the Board for the 1994–95 school year and for other appropriate relief. The Board filed a motion to dismiss the complaint which the court granted after a hearing. Plaintiff appeals, requesting us to reverse with instructions that Plaintiff be allowed to proceed to prove the facts alleged in his complaint which, he maintains, would establish a contract of reemployment as a matter of law.

**DISCUSSION**

4. Plaintiff maintains that he had a binding employment contract with the Board. He argues that a contract was created either (1) by his acceptance of the offer contained in the May 4, 1994 memorandum from his supervisors, or (2) by the Board's failure to provide timely notice of its intent not to reemploy him as required by State Board of Education Regulation No. 75–7 (June 24, 1988) (the Regulation).

5. Plaintiff's first argument does not require protracted discussion. Plaintiff contends that he had a binding contract when his supervisors notified him of their intention to recommend reemployment which he then accepted in writing. We do not agree. It is quite clear that an official offer to reemploy, just like notice to terminate, can only come from the contracting party, the school board. *See* NMSA 1978, § 22–10–12 (Repl. Pamp.1993) ("[T]he local school board ... shall serve written notice of reemployment or termination[.]"); NMSA 1978, § 22–10–14(A) (Repl.Pamp.1993) ("A local school board ... may decline to reemploy[.]"). Recommendations by school personnel are simple that— recommendations. They may form the foundation for later school board action, but a teacher may no more rely contractually upon a mere recommendation to reemploy than a school board may rely upon an unfavorable recommendation to put a teacher on notice of a board's intention not to reemploy. Over twenty-seven years ago, this Court noted the statutory irrelevance of a mere recommendation to a school board regarding proposed termination of employment, when we observed that,

> Although appellant may have known her Principal was going to recommend to the Local Board that she not be re-employed, this placed no burden upon her to employ an attorney, or to otherwise begin the preparation of her defense, in anticipation of the ruling of the Local Board. She was entitled, insofar as the Statute and the Rule permitted, to a timely notice. By this we mean a notice served pursuant to the requirements of the Rule.

*Brininstool v. New Mexico State Bd. of Educ.*, 81 N.M. 319, 321, 466 P.2d 885, 887 (Ct.App.1970). A teacher cannot have it both ways. He must await formal action by the local board, favorable or unfavorable, unless as we shall see, the board does nothing by the end of the school year. Therefore Plaintiff's purported acceptance was inoperative to form an employment contract with the Board. *Cf. Provoda*, 111 N.M. at 580, 808 P.2d at 30 (assuming but not deciding this issue).

6. Plaintiff's second argument requires us to examine the interplay between the relevant statutes and the Regulation, which govern the process of reemploying teachers from year to year. According to Section 22–10–12, each certified school instructor is entitled to notice, "[o]n or before the last day of the school year[,]" of either reemployment or termination. Failure of a local school board to serve the required notice on a certified school instructor "shall be construed to mean that notice of reemployment has been served upon the person for the ensuing school year[.]" *Id.* In other words, by operation of law, school board silence operates to create an implied offer to reemploy that must then be accepted or rejected in writing within 15 days from the last day of the school year. *See id.;* NMSA 1978, § 22–10–13 (Repl.Pamp.1993). Thus, the Board's written notice to Plaintiff not to reemploy him, issued four days before the last day of school, on May 23, clearly satisfied the "[o]n or before the last day of the school year" requirement of Section 22–10–12.

7. In response, Plaintiff points to the Regulation which requires that notice of reemployment or termination be served no later than 14 days *before* the end of the school year. In its own words, the Regulation advances the time line for notification by 14 days, "[n]otwithstanding Section 22–10–12, New Mexico Statutes Annotated, 1978." *See also Provoda,* 111 N.M. at 579, 808 P.2d at 29 (discussing earlier version of the Regulation). Plaintiff argues that the Board's notice not to reemploy did not satisfy the 14 day notice requirement of the Regulation. He then argues that the statutory remedy of an implied offer to reemploy was also triggered at the 14 day cutoff point. Thus, according to Plaintiff, as of May 13, which was 14 days before the end of the school year and 10 days before the Board sent written notice, Plaintiff was the recipient of an implied offer to reemploy which he had already "accepted" on May 6, thereby obligating the Board to rehire him for the following year.

8. We do not find Plaintiff's argument persuasive. Our first reason is quite simply that his position is inconsistent with what the statute says. In interpreting and applying a statute, we look to the plain meaning of the language as well as the legislature's purpose to be achieved. *See State ex rel. Helman v. Gallegos,* 117 N.M. 346, 871 P.2d 1352 (1994). Our legislature has chosen to equate silence with an implied offer to reemploy. This choice reflects a legislative decision to place the burden of going forward upon the local school board. But that legislative choice is operative only if the local school board fails to serve a written notice of reemployment or termination by the last day of the school year. *See* § 22–10–12. We read the statute to mean that no implied offer exists until the end of the year. Our Supreme Court has previously interpreted the statute in a similar manner when applied to nontenured personnel like Plaintiff. *See Provoda,* 111 N.M. at 581, 808 P.2d at 31.

9. We acknowledge that earlier decisions of this Court have allowed the State Board of Education to adopt its own notice period in advance of the end of the year as long as that action is not inconsistent with the statute. *See Brininstool,* 81 N.M. at 320–21, 466 P.2d

at 886–87; *Tate v. New Mexico State Bd. of Educ.,* 81 N.M. 323, 324, 466 P.2d 889, 890 (Ct.App.1970). But these cases have merely authorized the State Board of Education to create its *own* administrative remedy for the benefit of tenured teachers who were not notified within 14 days of the end of the school year. *See Brininstool,* 81 N.M. at 320, 466 P.2d at 886 ("Neither the Statute nor the Rule requires, or even suggests, that the statutory and rule notice be one and the same."). Nothing in these cases requires that the statutory remedy of an implied offer to reemploy be the applicable remedy for violation of an administrative regulation.

10. The predecessor of the current Regulation was designed to facilitate hearing rights for tenured teachers upon receipt of a notice of termination. *See id.* at 321–22, 466 P.2d at 887–88. As a nontenured teacher without hearing rights, Plaintiff clearly would not have been an intended beneficiary of the Regulation in its earlier form. In that version, the Regulation supplied its own remedy for tenured teachers, stating that failure to notify within 14 days before the end of the year " 'shall be deemed prejudicial departure under procedures prescribed by the State Board of Education and shall be sufficient cause for the State Board to reverse a decision of a local school board * * * not to reemploy the certified school instructor.' " *Provoda,* 111 N.M. at 579, 808 P.2d at 29. That language was deleted in 1988 because the State Board of Education no longer hears appeals from decisions of local school boards. *Id.* at 579 n. 2, 808 P.2d at 29 n. 2. However, as our Supreme Court noted, even the earlier language permitting an appeal to the State Board, "does not appear to require reversal; although the failure is deemed a 'prejudicial departure', the failure, while providing cause for reversal, does not by its terms mandate it." *Id.* at 580, 808 P.2d at 30. Therefore, even the former remedy under the earlier version of the Regulation was less favorable to the teacher than the statutory remedy of an implied offer. No administrative remedy has been substituted in its place, so that, on its face, the Regulation now creates a right of 14 day notice in the teacher but without any remedy for noncompliance. We have no authority to graft a remedy onto an administra-

tive regulation especially when the State Board of Education has not seen a need to take action on its own.

11. More particularly, we cannot broaden a regulation in a manner inconsistent with the statute. Sections 22–10–12 and 22–10–13, taken together, permit a teacher who does not receive any notice to wait until 15 days after the end of the school year to accept the statutory implied offer of reemployment. *See Hyde v. Taos Mun. Sch.*, 84 N.M. 206, 207, 501 P.2d 194, 195 (1972). Adopting Plaintiff's position would arguably move the statutory acceptance period forward by 14 days, or at the very least, create an ambiguity as to when a teacher must accept an implied offer for reemployment. The most we have stated in our previous cases is that the State Board may create its own regulatory scheme with its own remedy, as long as it is not inconsistent with the express will of the legislature. *See Brininstool*, 81 N.M. at 321, 466 P.2d at 887. But when the statute speaks clearly, it must be followed. It would be most ironic if we were to read language into a regulation that we would likely reject if it came from the State Board.

12. Plaintiff's theory is also inconsistent with the purpose of the Regulation. Both the history of the Regulation and the case law interpreting it demonstrate that the 14 day advance notice period was designed for the benefit of tenured teachers who needed the advantage of an earlier notice of termination to plan for hearings, obtain witnesses, and prepare a defense before the end of school. *See Provoda*, 111 N.M. at 580, 808 P.2d at 30; *Brininstool*, 81 N.M. at 321, 466 P.2d at 887. Tenured teachers, those with at least three years of consecutive employment, may not be terminated without just cause and are entitled to a just cause hearing. Section 22–10–14. Nontenured teachers, like Plaintiff, may only request the reasons for their termination, but may not use those reasons to protest the board's decision and have no right to a hearing. *See* § 22–10–14(A). Nontenured teachers may be terminated for any reason, not limited to a standard of just cause. *Id.* Lacking hearing rights, nontenured teachers have no such

need for advance notice. While earlier notice might be of some benefit to nontenured teachers as well, there has never been any indication, either from the State Board or the legislature, of the intent to grant them such a benefit.

13. So far, this case differs little from existing case law, particularly *Provoda*. Recognizing this problem, Plaintiff constructs a novel argument of negative inference. He agrees that the former language of the Regulation limited its remedy to tenured teachers which enabled our Supreme Court to hold in *Provoda* that the 14 day notice period was not available to teachers without tenure. However, Plaintiff contends, the Regulation no longer makes any explicit distinction between tenured and nontenured teachers because, as noted earlier, the reference to appeals to the State Board was deleted. Therefore, according to Plaintiff, the State Board has for the first time put tenured and nontenured teachers on an equal plane. If tenured teachers still have the right to a 14 day advance notice, then, he contends, so would nontenured teachers because the Regulation now makes no distinction between the two.

14. In response, we note, once again, the contradiction between Plaintiff's argument and the statute, which must be our ultimate guide. We also observe that if the intent behind the 1988 State Board amendments removing the reference to a State Board appeal was to put nontenured teachers on an equal footing with tenured teachers, then the State Board has concealed its intention well. The Regulation simply does not say that. Even if we were to assume equal status, it is unclear how tenured teachers are to enforce the regulatory right to 14 days advance notice now that the Regulation has been stripped of any regulatory remedy. We need not decide the implications of the 1988 regulatory amendment for tenured teachers; that question is not before us. Indeed, the uncertainty that would be created on that subject is a further reason for caution against adopting Plaintiff's proposed interpretation. We conclude that this Regulation, which never before granted advance notice rights to nontenured teachers, and even now

does not do so on its face, does not create in Plaintiff, a nontenured teacher, any right enforceable by this Court to notice different from that set out by statute.

15. Finally, even if we were to assume that the local Board had made a statutory offer of reemployment because it failed to communicate in writing by the fourteenth day before the end of the school year, this would not change our result. Under the statute and established precedents, a statutory offer must be accepted in writing, and that acceptance must issue within fifteen days from, meaning after, the last day of the school year when there has been no written notice. *See* § 22–10–13; *Provoda*, 111 N.M. at 581, 808 P.2d at 31; *Hyde*, 84 N.M. at 207, 501 P.2d at 195. Clearly, that acceptance must be served after the effective date of the implied offer, which is the last day of school. As our Supreme Court stated in *Provoda*, referring to Section 22–10–13, "[t]he section does not authorize written acceptance within fifteen days *of* the end of school, but *from* the end of school; moreover, the entirety of the section indicates that acceptance is contemplated only after school has ended without the teacher having received any notice." 111 N.M. at 581, 808 P.2d at 31.

16. In this case, if Plaintiff tendered an acceptance, he did so in response to the initial letter of intended recommendation by school supervisors; Plaintiff did not respond to the implied offer that he claims was statutorily created by the inaction of the Board. We have already determined that the acceptance was inoperative as to the initial letter of recommendation. Plaintiff would have the May 6 acceptance be transmuted by operation of law into an acceptance of a statutory offer effective a week later, as of the fourteenth day before the end of the school year. However, according to our precedents, notice requirements require strict compliance and the same is·true of acceptance. *See Provoda*, 111 N.M. at 580, 808 P.2d at 30; *Hyde*, 84 N.M. at 207, 501 P.2d at 195. Plaintiff has not cited any case which would authorize us to consider an acceptance of teacher employment effective before the making of an offer of reemployment, and we decline to do so here.

**CONCLUSION**

17. This entire subject may be appropriate for review by the State Board of Education or perhaps the legislature. Reasonable expectations of local boards and teachers should not be frustrated by ambiguities in the current language of regulation and statute. Our job today, however, is to apply that language as it is. Doing so, we hold that Plaintiff, a nontenured teacher, did not have any right enforceable by this Court to notice before the end of the school year, and therefore the Board's notice of intent not to reemploy, which was served on May 23, complied with New Mexico law. Accordingly, the judgment of the district court is affirmed.

18. IT IS SO ORDERED.

FLORES and BUSTAMANTE, JJ., concur.